## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SAHAB SINGH, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   Case No. CIV-26-1113-R |
| | ) |
| CHRIS GANTT, et al., | ) |
| | ) |
| Respondents.[1] | ) |

### REPORT AND RECOMMENDATION

Petitioner Sahab Singh, a noncitizen,[2] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[3] United States District Judge David L. Russell referred the case to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The Government responded, Doc. 13, and Petitioner has replied, Doc. 14. So the matter is at issue.

---

[1]    Respondent Chris Gantt, Warden of the Cimarron Correctional Facility, is not a federal official. The response is not filed on the Warden's behalf. *See* Doc. 13, at 1 n.1.

[2]    This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[3]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition in part and order Respondents to immediately release Petitioner.

## I.    The Court has jurisdiction to review the Petition.

Petitioner was housed at the Cimarron Correctional Facility, located in this district, when he filed the Petition on May 15, 2026. This Court ordered Respondents to notify the Court before any transfer of Petitioner. Doc. 9. Counsel for Respondents states he "became aware on May 29, 2026, at 6:22 pm that the Petitioner had been moved on May 21, 2026, from the Cimarron Correctional Facility to the Rio Grande Detention Center," and that "ICE has not moved Petitioner since it received the Court's Order." Doc. 11, at 1-2.

A court may issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). District courts are authorized to entertain petitions for habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). Because Petitioner was confined within this district at the time he filed the Petition and he named his immediate custodian, this Court properly exercises habeas jurisdiction under 28 U.S.C. § 2241. *Cf. Ex parte Endo*, 323 U.S. 283, 304-06 (1944) (holding that "the District Court acquired jurisdiction . . . and that the removal of [the petitioner] did not cause it to lose jurisdiction where a

2

person in whose custody she is remains within the district"); *Pinson v. Berkebile*, 604 F. App'x 649, 652-53 (10th Cir. 2015) (holding that "District of Colorado acquired jurisdiction when [the petitioner] filed his habeas petition" while he was held in Colorado and his transfer to another state did "not defeat that initial jurisdiction" (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 440-41 (2004))).

## II.    Factual background and Petitioner's claims.

Petitioner is a citizen of India. Doc. 1, at 1. On March 25, 2023, he entered the United States without inspection. *Id.* On March 28, 2025, the Department of Homeland Security (DHS) placed him into removal proceedings under 8 U.S.C. § 1229a. Doc. 1, Ex. 1. DHS issued a Notice to Appear (NTA) charging him as removable under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA).[4] *Id.* DHS released Petitioner on an order of release on recognizance under 8 U.S.C. § 1226 subject to Alternatives to Detention

---

[4]    This section is codified in the United States Code at 8 U.S.C. § 1182(a)(6)(A)(i). Section 1182(a)(6)(A)(i) provides that a noncitizen who is present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General is ineligible to be admitted to the United States. 8 U.S.C. § 1182(a)(6)(A)(i).

monitoring and routine check-ins with Immigration and Customs Enforcement (ICE). Doc. 1, at 1 & Ex. 2.

Petitioner maintains he has fully complied with all conditions of his release. Doc. 1, at 2. Petitioner states he has applied for Asylum and Withholding of Removal and has been legally working since his release on recognizance. *Id.* at 2. On May 5, 2026, while working as a commercial truck driver, ICE detained him while he was stopped at a routine inspection scale. *Id.*

Petitioner asserts he never received a reason for his detention or any opportunity to respond. *Id.* Respondents do not contradict Petitioner's representations. Doc. 13.

Petitioner argues that his re-detention without a pre-deprivation hearing violated the Fifth Amendment Due Process Clause, Doc. 1, at 12-15; that ICE failed to provide him with the required notice and hearing in violation of the INA, *id.* at 15-16; and that Respondents' actions violated the Administrative Procedure Act (APA) and the Fourth Amendment. *Id.* at 16-19.

He seeks a declaration that his redetention violates the Fifth and Fourth Amendments, the INA, and the APA; his immediate release; enjoinment of Respondents from redetaining him without a constitutionally adequate

process; an order vacating his unlawful custody; and attorney's fees and costs under the Equal Access to Justice Act. *Id.* at 19-20.

In their response to the habeas corpus petition, Respondents argue that Petitioner is subject to mandatory detention under § 1225(b)(2)(A), that this Court should not reach any constitutional issue, and that Petitioner's Fourth Amendment claim fails. Doc. 13, at 1-3.

## III.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV.    Discussion.

### A.    Petitioner has the right to procedural due process.

Petitioner claims that his ongoing detention without a hearing violates his rights under the Due Process Clause of the Fifth Amendment. Doc. 3, at 4-7. To the extent that Respondents substantively address Petitioner's procedural due process argument, they assert that "Petitioner is being held

pursuant to 8 U.S.C. § 1225(b)(2)(A) and is not entitled to a bond hearing." Doc. 13, at 1.[5]

Respondents do not dispute that Petitioner was released into the country on his own recognizance after being referred to the Alternatives to Detention program. Doc. 1, Ex. 2; Doc. 13. So Respondents incorrectly rely on the mandatory detention provision of § 1225(b)(2)(A) to justify Petitioner's continued detention because Petitioner entered the country over three years ago. *See, e.g.*, *Quiroz v. Mullin,* --- F.4th ----, 2026 WL 1876709, at \*5 (10th Cir. June 30, 2026) (holding "that noncitizens who entered the United States and . . . [are] thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A).").[6]

---

[5]    Section 1225(b)(2) mandates detention for noncitizens who are "applicant[s] for admission, [where] the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). And under § 1225(b)(1)(A)(i), "[i]f an immigration officer determines that [the noncitizen] . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) . . ., the officer shall order the [noncitizen] removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." An individual detained as inadmissible upon inspection at the border can only be paroled into the United States "'for urgent humanitarian reasons or significant public benefit.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)).

[6]    Petitioner's asylum request does not change this outcome. This Court has "declined to find" that either refusing to voluntarily depart or seeking

### 1.    Petitioner is entitled to relief.

When Petitioner was detained after residing in the country for three years, he was not subject to mandatory detention under § 1225(b)(2)(A) as Respondents argue. *Quiroz,* 2026 WL 1876709, at \*5.

To release Petitioner, DHS had to determine that he "would not pose a danger to property or persons," and that he was "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Respondents identify no change in circumstances that required revocation of Petitioner's conditional release. So he is entitled to relief. *See Barbosa da Cunha v. Freden,* 175 F.4th 61, 70 (2d Cir. 2026) (concluding the petitioner's detention was "governed by Section 1226(a), not Section 1225(b)(2)(A)," and explaining that its holding "allows noncitizens . . . who are already present in the United States and are determined not to be a flight risk or danger to the community to be released on bond under Section 1226(a) while their removal proceedings are pending").

---

asylum "'constitutes 'seeking admission' for purposes of this subsection.'" *Malacidze v. Noem,* No. CIV-25-1527-D, 2026 WL 227155, at \*3 (W.D. Okla. Jan. 28, 2026) (quoting *Cruz-Hernandez v. Noem,* No. CIV-25-1378-D, 2026 WL 18932, at \*1 (W.D. Okla. Jan. 2, 2026)); *see also Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami,* 175 F.4th 1258, 1284 (11th Cir. 2026) ("This argument fails at the gate. Section 1225(b)(2)(A) makes it clear that an applicant for admission's status as one 'seeking admission' becomes relevant upon examination by an immigration officer, which occurs *before* a § 1229a proceeding even commences." (quoting 8 U.SC § 1225(b)(2)(A))).

### 2.    Procedural due process analysis.

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.,* 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (internal quotation marks omitted)).

"The [INA] establishes procedures for removing [and detaining noncitizens] living unlawfully in the United States." *Johnson v. Guzman Chavez,* 594 U.S. 523, 527 (2021); *see Johnson v. Arteaga-Martinez,* 596 U.S. 573, 578 (2022) ("The INA establishes procedures for the Government to use when removing certain noncitizens from the United States and, in some cases, detaining them."). Respondents encourage the Court to rest its decision solely on the statutory interpretation question. *See* Doc. 13, at 2.

This Court analyzes Petitioner's procedural due process claim to determine whether he has a protected liberty interest, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Due Process Clause of the Fifth Amendment. *See Ky. Dep't of Corr. v. Thompson,*

8

490 U.S. 454, 460 (1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

"When the [G]overnment grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process]

9

Clause protects"). DHS deprived Petitioner of his liberty interest when it re-detained him.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending over three years here. By initially releasing Petitioner on his own recognizance, the Government necessarily determined that he was "neither a security risk nor a risk of absconding," 8 C.F.R. § 212.5(b). Respondents have presented no evidence that there was a change in this assessment. By permitting Petitioner to remain at liberty for three years, the Government enabled Petitioner to develop a protected liberty interest in remaining out of custody. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondents do not suggest Petitioner violated any laws while in the United States. During his release, Petitioner's interest in release grew even stronger as he presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

10

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where ICE arrested him at a weigh station without any notice of the reason or a pre-deprivation hearing.

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at \*6 (E.D. Cal. Feb. 9, 2026), *adopted*, 2026 WL 440566 (E.D. Cal. Feb 17, 2026). Respondents detained Petitioner with no procedural safeguards to determine whether the revocation of his release was justified. This factor weighs in Petitioner's favor. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the [G]overnment has an interest in enforcing immigration laws," the Government's interest in arresting Petitioner without a

determination whether he posed a risk of flight or danger is low. *Saqib*, 2026 WL 350830, at *6. And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the Government to follow its own laws and regulations. *See, e.g.*, *Iza*, 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the [G]overnment comports with its own internal standards regarding parole revocation."). This is especially true given that Petitioner's detention was not considered necessary for three years.

### B.    Remedy.

Habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "The typical remedy for such detention is, of course, release." *Id.*; *see also Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243; *see also United States v. Allen*, 139 F.3d 913 (10th Cir. 1998) ("If the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." (quoting *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir.1990)).

12

The undersigned finds that the ongoing violation of Petitioner's due process rights requires his immediate release subject to the same conditions of his earlier release.[7] This view is shared by numerous courts across the country.[8]

## V.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant** Petitioner's habeas petition in part and **order his immediate**

---

[7]    "Many orders in similar cases require that a bond hearing be set in a short period of time with an automatic release if the hearing does not occur. Those cases do not examine the effect of a pending asylum petition or a clear conditional release order under § 1226." *Velasquez Montillo v. Brooksby*, 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026).

[8]    *See Ewere v. Cerna,* No. CIV-26-320-SLP, 2026 WL 1207088, at *1-2 (W.D. Okla. May 4, 2026) (ordering Petitioner's "immediate release" for due process violation and denial of a bond hearing); *Singh v. Noem*, 2026 WL 766228, at *10 (D.N.M. Mar. 18, 2026) ("Petitioner's . . . release is required to remedy the ongoing due process violation caused by Petitioner being detained while his conditional parole has not yet been terminated."); *Velasquez Montillo,* 2026 WL 592355, at *10 (concluding immediate release was the appropriate remedy where "there has been no notice of a change in circumstances requiring modification of the November 2021 [order of release on recognizance]"); *Vielma Uzcategui v. Brooksby*, 2026 WL 622751, at *13 (D. Utah Mar. 5, 2026) (same as to petitioner ordered released on her own recognizance in September 2023); *Murzi v. Noem*, 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) (ordering petitioner's immediate release where petitioner had previously been released on parole).

**release.**[9] **The undersigned also recommends that the Court order Respondents to certify compliance by filing a status report within ten business days of the Court's order**, and to promptly provide a copy of this order to counsel for the Warden of the Rio Grande Detention Center where Petitioner is detained. Finally, the Court should order that Respondents cannot re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decision-maker where the Government bears the burden of proving, by clear and convincing evidence that Petitioner is a flight risk and a danger to the community.[10]

---

[9]    Should the Court determine a bond hearing is the appropriate remedy, the undersigned recommends that, given Petitioner's prolonged detention under the incorrect statute, the Court should find that it is more appropriate for the Government to bear the burden of proof in this context. *See, e.g.*, *Garcia Cortes v. Noem*, 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (placing the burden of proof on the Government to justify the petitioner's continued detention (citing *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024)). Having released Petitioner in 2023, the Government ought to now bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight such that he should remain in detention. *See L.G.*, 744 F. Supp. 3d at 1186 ("In general, the Supreme Court has held that the clear and convincing standard applies to civil detention where liberty is at stake." (first citing *United States v. Salerno*, 481 U.S. 739, 751 (1987), and then citing *Addington v. Texas*, 441 U.S. 418, 433 (1979))).

[10]    The Court finds that it need not reach Petitioner's remaining arguments. As to Petitioner's request for EAJA fees, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B).

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by July 14, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[11] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

---

[11]    Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

**ENTERED** this 10th day of July, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE